# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:15-CV-00519-RJC-DSC

| | |
|---|---|
| JOSELINE MONTERO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| BANK OF AMERICA LONG-TERM ) | |
| DISABILITY PLAN, ) | |
| AETNA LIFE INSURANCE COMPANY, ) | |
| BANK OF AMERICA GROUP ) | |
| BENEFITS PROGRAM, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on Plaintiff Joseline Montero's ("Plaintiff" or "Montero") Motion for Summary Judgment, (Doc. No. 13); Defendants Aetna Life Insurance Company's, Bank of America Long-Term Disability Plan's, and Bank of America Group Benefits Program's (collectively "Defendants") Motion for Summary Judgment (Doc. No. 15); and all the related briefings supporting and opposing the pending cross motions (Doc. Nos. 14, 15-1, and 16–19). The Court held a hearing on November 8, 2016 where counsel for both Plaintiff and Defendants presented their respective arguments. The cross motions for summary judgment are ripe for adjudication.

## I. BACKGROUND

Plaintiff was a business support manager, a sedentary job, at Bank of America since 2000. See Administrative Record ("Record") (Doc. No. 12), at 7010028. In 2002, Plaintiff began experiencing severe pain ultimately diagnosed as fibromyalgia, a diagnosis which

Defendants do not dispute.[1]  Id. at 7010227.  Plaintiff's last day at work at Bank of America was January 20, 2012.  Id. at 7010028.  She made a claim for short-term disability ("STD") benefits, claiming she was disabled due to fibromyalgia and chronic fatigue syndrome, and was initially approved for those benefits for 30 days.  Id.  That coverage was extended until March 28, 2012 based on medical records Aetna received about Plaintiff's ongoing rehabilitation.  Id. at 7010323 and 7010057.  On March 29, 2012, Plaintiff returned to work and her STD benefits were terminated, but on April 10, 2012, she left work stating that she could not work due to continued pain in her neck and back, and due to fatigue.  Id. at 7010126.  Plaintiff's STD claim was reopened, but was denied due to lack of medical support establishing that she was unable to perform the essential functions of her occupation.  Id. at 7010174.

On July 19, 2012, Plaintiff appealed the decision to deny her reopened STD claim.  Record at 7010227.  Aetna retained an independent peer review, Dr. Mark Borigini, who conducted a review and concluded that there was no evidence of disability from a rheumatologic perspective.  Id. at 7010214–216.  Aetna also obtained another peer review from Dr. Stuart Rubin, who concluded that the medical records for Plaintiff did support a finding of functional impairment.  Id. at 7010206–209.  Accordingly, Aetna reinstated STD benefits for Plaintiff through the remaining STD benefit period.  Id. at 7010190.

On January 11, 2013, Plaintiff was approved for long-term disability ("LTD") benefits, retroactive to August 4, 2012.  Id. at 7010577.  In granting Plaintiff LTD benefits, Defendant Aetna found that Plaintiff met the definition of disability under the Bank of America Long Term Disability Plan (the "Plan"), which was: "You cannot perform the material duties of your own

---

[1]  Fibromyalgia is a medical condition characterized by widespread pain accompanied by symptoms such as severe fatigue, sleep disorders, problems with cognitive functioning, irritable bowel syndrome, headaches, migraines, anxiety, and depression.  Record at 7011060–070.

occupation solely because of an illness, injury or disabling pregnancy-related condition; and [y]our earnings are 80% or less of your adjusted predisability earnings." Id. at 70000357 (emphasis in original).

Under the Plan, Plaintiff had to qualify for LTD benefits under a different test in order to continue receiving benefits beyond 18 months. At the 18-month mark, the test of disability became: "[Y]ou meet the plan's test of disability on any day you are unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition." Id. at 7000357 (emphasis in original). The Plan defined reasonable occupation as: any gainful activity Plaintiff is or "may reasonably become, fitted by education, training, or experience; and [w]hich results in, or can be expected to result in, an income of more than 60% of your adjusted predisability earnings." Id. at 70000374 (emphasis in original). Aetna reviewed Plaintiff's LTD claim to determine whether she would be eligible for continued benefits past this 18-month period. Id. at 7010588. As part of this review, Aetna retained another independent peer reviewer, Dr. Wendy Weinstein, to review Plaintiff's records. Record at 7010704–709. Although Plaintiff's treating physician, Dr. Charles Lapp, concluded that Plaintiff was unable to work, Dr. Weinstein found that there was no support for Dr. Lapp's opinion that Plaintiff was functionally impaired from performing her own occupation or any occupation. Id. at 7010707–708. Dr. Lapp was given an opportunity to comment on Dr. Weinstein's report and provided multiple statements and reports stating his basis for Plaintiff's disability status, including that physical and cognitive issues prevented her from performing any work. Id. at 7010878–885. Aetna obtained another peer review, this time by Dr. David Alter to review Plaintiff's alleged cognitive deficits. Id. at 701699–703. Based on a review of Plaintiff's medical records, Dr. Alter determined there was insufficient evidence to support the conclusion that Plaintiff was

unable to perform the duties of her occupation due to a cognitive impairment. Id. at 7010702. Additionally, Aetna had a transferable skills analysis ("TSA") conducted, which identified four positions that Plaintiff could perform with her background and restrictions that would allow her to earn 60% of her adjusted predisability earnings. Id. at 7011187. As a result of all the above, Aetna terminated Plaintiff's LTD benefits effective March 30, 2014. Id. at 7010639–642.

On September 24, 2014, Plaintiff appealed the termination of her LTD benefits. Id. at 7011182. Plaintiff submitted new evidence, including statements from her, her husband, her attorney, and another physician, Dr. Alison Johnson. (Doc. No. 15-1 at 10). Aetna review the records and obtained additional peer reviews from Dr. Paul Howard and Dr. Todd Finnerty. Record at 7010679–685, 7010667–672. Both doctors concluded that the evidence did not support a finding of functional impairment. Id. Based on its review, Aetna upheld its decision to terminate Plaintiff's claim for LTD benefits. Id. at 7010661–664. On October 28, 2015, Plaintiff filed suit against Defendants challenging the decision to terminate her LTD benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. (Doc. No. 1).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249–50.

Finally, ERISA actions are usually adjudicated on summary judgment rather than trial." Vincent v. Lucent Technologies, Inc., 733 F. Supp. 2d 729, 733–34 (W.D.N.C. 2010) (citing Carden v. Aetna Life Ins. Co., 559 F.3d 256, 260 (4th Cir. 2009)).

## III. DISCUSSION

Fibromyalgia presents a difficult diagnosis for doctors, insurers, and the courts to evaluate. Marked by pain and fatigue, it is difficult to objectively prove, which makes it susceptible to manipulation and fraud.[2] At the same time, it cannot be ignored as a real, painful disease that, by itself and without other physical limitations, can rise to the level of disability. The Record shows, as discussed further below, that Defendant Aetna failed to address Plaintiff's complaints adequately substantiated by her doctors. Additionally, Defendant Aetna suffered from problematic conflict of interest. These two factors lead the Court to conclude that Defendant Aetna's decision was not reasonable and must be overturned.

### A. Scope of Evidence to Be Considered

As an initial matter, the parties dispute the scope of the evidence to be considered by the Court. Defendants assert that only the Administrative Record, (Doc. No. 12), should be considered, while Plaintiff asserts that Defendants' responses to Plaintiff's requests for Admission, (Doc. No. 13-1), and Plaintiff's Declaration and attached exhibits, (Doc. No. 13-2), should also be considered because the information contained in those sources would have been known by the administrator at the time of the LTD benefit decision. The Court does not make a finding on this issue because the Court's decision is adequately supported by the administrative record alone.

### B. Whether Aetna Abused Its Discretion

The ERISA statute does not specify the appropriate standard of review for actions challenging benefit eligibility determinations actions under 29 U.S.C. § 1132(a)(1)(B). Firestone

---

[2] But see Record at 7011080 (stating that "[d]ebating the 'realness' of symptoms is often a waste of time" as persons rarely deliberately fake symptoms).

Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109.  Depending on the language of the insurance plan at issue, a plan administrator's disability benefit determination can be reviewed either de novo or for abuse of discretion.  Id. at 115.  If a plan "confers discretion on a fiduciary and the fiduciary acts within the scope of conferred discretion, [courts] defer to the fiduciary in accordance with well-settled principles of trust law . . . ." Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000) (citing Firestone, 489 U.S. at 111).  In this instance, despite some dispute as to which plan documents governed Plaintiff's claims, it appears that discretionary authority was properly allocated to Aetna under the plan and Aetna acted within the scope of the plan.  The plan documents provided by Defendants to Plaintiff stated that Bank of America delegated "discretionary authority to determine eligibility for benefits" to insurance companies, among other entities.  Record at 70000205.  Furthermore, there are no allegations that Defendant Aetna acted outside the scope of its discretion.  Therefore, Aetna's decision not to continue LTD benefits for Plaintiff shall be reviewed for abuse of discretion.

Under the abuse of discretion standard, an administrator's decision must be reasonable. Bernstein v. CapitalCare, Inc., 70 F.3d 783, 787 (4th Cir. 1995).  The Fourth Circuit has held that an administrator's decision is reasonable if it is "the result of deliberate, principled reasoning process and if it is supported by substantial evidence;" where the decision is reasonable, it should not be disturbed by a court reviewing that decision for abuse of discretion. Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997).  Even if the Court would have come to a different conclusion independently, the Court will not reverse the plan administrator's decision if it is reasonable. Booth, 201 F.3d at 344.  The Fourth Circuit has identified the following eight nonexclusive

factors (known as the Booth factors) that a court may consider in determining if an administrator's decision is reasonable:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Id. at 342–43. In applying the Booth factors, the court does not weigh the evidence in the administrative record but, rather, reviews it to confirm that the claim decision was the product of a principled, reasoned decision-making process supported by substantial evidence. Williams v. Metropolitan Life Ins. Co., 609 F.3d 622 (4th Cir. 2010). If so, the claim determination will be upheld. Reviewing the administrative record in light of these eight factors, the Court concludes that Defendant Aetna's decision was not reasonable because it was not the product of a reasoned and principled process and because of the conflict of interest that existed within Defendant Aetna.

### 1. Defendant Aetna's decision-making process was not reasoned and principled

Although Defendant Aetna cited numerous bases for its determination to terminate Plaintiff's LTD benefits, Defendant Aetna did not adequately consider or rebut the evidence Plaintiff provided of her disability, and therefore, its decision was not the product of a reasoned and principled process. In support of Plaintiff's claim for LTD benefits, she submitted her own sworn testimony; that of her husband; and years of medical records that contemporaneously documented and substantiated Plaintiff's claims of pain and symptoms that eventually led to her

diagnosis of fibromyalgia. Due to the subjective nature of fibromyalgia symptoms,[3] Plaintiff submitted the best evidence she could to prove her condition. See DuPerry v. Life Ins. Co. of N. Am., 632 F.3d 860, 873 (4th Cir. 2011) (noting that plaintiff, who had fibromyalgia, "produced the only types of evidence a claimant in her situation could produce, her own description of the severity of her subjective symptoms, videos showing how she moved in her condition, and her treating physicians' opinions that the pain and fatigue rendered her unable to work.").

After Plaintiff provided substantial evidence of her disability, Defendant Aetna had the burden of presenting substantial evidence to rebut Plaintiff's evidence. Defendant Aetna certainly relied on numerous pieces of evidence to justify terminating Plaintiff's LTD benefits on the basis Plaintiff had no "functional impairment that would preclude [her] from performing any reasonable occupation with a sedentary physical demand level." Record at 7010640. Among other things, Defendant Aetna cited the reports of multiple independent, board-certified reviewers that found "no specific focal deficits, progressive deficits or significant neurological findings to support an inability to function" and concluded that Plaintiff was "physically capable of working up to 40 hours per week." Id. at 7010640. Additionally, Defendant Aetna relied on Capabilities and Limitations Worksheets ("CLWs") that Plaintiff's physician completed, which observed that Plaintiff could stand, walk, and lift up to ten pounds occasionally. Id. at 7010662.

Defendant Aetna also acknowledged the substantial evidence Plaintiff submitted, but Defendant Aetna did not address this evidence. Id. at 7010661–664. For example, Defendant Aetna noted "a longstanding history of pain, fatigue and . . . widespread tender points," "cognitive difficulties," "ongoing fibromyalgia," "diagnostically significant pain, fatigue and

---

[3] An article published on Aetna-Intel-health's website describes the subjectivity of fibromyalgia: "Many diseases including fibromyalgia have 'subjective' symptoms and can't be confirmed by observation or tests." Record at 7011080.

exhaustion from even minimal activities along with dizziness, nausea, headaches, sleep disorder, bowel and bladder problems and cognitive difficulties," and conclusions by Plaintiff's treating physicians that she is "unable to work on a full-time basis." Id. at 7010662–663. Defendant Aetna also mentioned that Plaintiff "reported that she was unable to continue the work demands as of January 2012 because of pain, fatigue and cognitive impairment." Id. at 7010662.

Mere mention of Plaintiff's evidence is not enough. Defendant Aetna did not address that evidence "thoughtfully and at length" and rebut the evidence with its own substantial evidence. Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 326 (4th Cir. 2008). Instead, it focused on "functional impairment," despite no requirement of a finding of functional impairment in the Plan. Defendant Aetna's focus on functional impairment missed the point. Plaintiff's claim for LTD benefits centers around her fibromyalgia causing pain and fatigue at a level that prevents her from maintaining a reasonable occupation. Plaintiff does not suggest that she cannot complete certain physical tasks, particularly for short periods of time. So, for example, because Plaintiff can sit and stand for short periods of time, and because she can lift objects up to ten pounds, does not mean that she can do those tasks with sufficient duration and regularity to maintain a sedentary job. As the Fourth Circuit recognized in DuPerry, completing tasks such as these "could hardly be found to be instructive on the question of whether [Plaintiff] could endure the rigors of a full workday or workweek." DuPerry, 632 F.3d at 871. Defendants here rely in part on Plaintiff's treating physician's checking "occasionally" for several activities and tasks listed in the CLWs, such as sitting, standing, and lifting ten pounds, which means Plaintiff's physician believed she could perform these tasks between 1% to 33% of the work day, or .5–2.5 hours. Record at 7010819, 7011273. The Fourth Circuit found the same argument unpersuasive in DuPerry where similar forms were used by the Defendant insurance company as

proof of the plaintiff's ability to work a sedentary job.  DuPerry, 632 F.3d at 871.  Similarly, this Court finds the activities checked "occasionally" on the CLWs only marginally persuasive and not indicative of Plaintiff's ability to sustain a reasonable occupation.

Tellingly, Aetna did not obtain any evidence to rebut Plaintiff's, her husband's, and her doctor's claims that her fibromyalgia and the pain and fatigue associated with it prevented her from working a reasonable occupation.  Indeed, Defendant Aetna emphasizes the number of board-certified peer reviewers who reviewed Plaintiff's files, but not a single one physically examined Plaintiff.  Defendant Aetna did not order an independent medical exam; nor did it obtain surveillance video of Plaintiff in an effort to rebut her claims—a piece of rebuttal evidence often obtained when insurance companies believe a claimant is fabricating or exaggerating debilitating pain, yet no such video was obtained here.  See, e.g., Marantz v. Permanente Medical Group, Inc. Long Term Disability Plan, 687 F.3d 320, 329–31 (7th Cir. 2012).  The law does not require an independent medical examination or surveillance video in all fibromyalgia cases, but in the current case the absence of such evidence when coupled with a conflict of interest, see Part III.B.2, infra, is probative.  See Neumann v. Prudential Ins. Co. of America, 367 F. Supp. 2d 969, 989 (E.D. Va. 2005) ("Although independent medical examinations are not required, they can prove 'especially significant' where, as here, 'the plan administrator is operating under a conflict of interest or rejects a treating doctor's opinion.'") (citations omitted).

In short, Defendant Aetna did not rebut Plaintiff's diagnosis of fibromyalgia or the allegedly disabling pain and fatigue resulting from her fibromyalgia.  Rather, the arguments made throughout this process have been like two ships passing in the night with Defendants focused on functional impairments and Plaintiff focused on disabling pain and fatigue.  It was

Defendants' burden to rebut Plaintiff's evidence, and by failing to do so, Defendant Aetna's decision to discontinue LTD benefits was not the result of a reasoned and principled decision-making process and was not supported by substantial evidence.

### 2. Defendant Aetna had a significant conflict of interest

The second Booth factor weighing in favor of Plaintiff is whether a conflict of interest existed. Defendant Aetna served as both the administrator of the Plan and the insurer. In other words, Defendant Aetna was responsible for deciding whether benefits should be paid and for paying those benefits. Serving in both of these roles creates a structural conflict of interest. Williams, 609 F.3d at 632. This conflict of interest can be of great importance "where circumstances suggest a higher likelihood that it affected the benefits decision . . . ." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008). On the other hand, structural conflicts of interest are not rare and do not always merit significant weight. For example, in Williams, the Fourth Circuit noted that structural conflicts of interest, where the same entity decides whether benefits should be paid and pays the benefits, should not receive significant weight where the plan administrator initially found a disability and paid LTD benefits. 609 F.3d at 632.

Here, more than a mere structural conflict of interest existed. Defendant Aetna also encouraged Plaintiff to apply for Social Security benefits and offered to pay a third party, Allsup, to represent her. Record at 7011294. Defendant Aetna's economic benefit for doing so is clear—any Social Security benefits Plaintiff received would offset what Defendant Aetna owed. Indeed, despite discontinuing Plaintiff's LTD benefits, Defendant Aetna still instructed Allsup to proceed with the representation, which could result in Defendant Aetna receiving back payment for disability benefits already paid to Plaintiff. Id. at 7010521, 7011546. Significantly, throughout this process, Defendant Aetna took contradictory positions regarding Plaintiff's

disability claims. Defendant Aetna told Plaintiff that the evidence she submitted did not support a finding of disability, while encouraging Allsup to argue to the Social Security Administration that Plaintiff "exhibited classic fibromyalgia tender points" and her complaints of "chronic pain are consistent with the medical records and should be found credible." Id. at 7011547.

Defendant Aetna's demonstrated conflict of interest, combined with Defendant Aetna's failure to address Plaintiff's fibromyalgia-related complaints demonstrate that the decision to discontinue Plaintiff's LTD benefits was not the product of reasoned and principled decision-making process. Specifically, Defendant Aetna's reliance on the findings of its peer reviewers that Plaintiff had no functional impairments—particularly when those peer reviewers did not physically examine Plaintiff—cannot alone substantiate a finding of no disability due to fibromyalgia. Accordingly, the Court finds that Defendant Aetna's decision was not reasonable and grants Plaintiff's motion for summary judgment.

## IV. REMEDY

Next, the Court must decide what the appropriate remedy is—whether to remand to the administrator or directly grant benefits. DuPerry, 632 F.3d at 875; Fisher v. Aetna Life Ins. Co., 890 F. Supp. 2d 473, 485–86 (D. Del. 2012). Plaintiff, in her Complaint and Motion for Summary Judgment, requested an award of benefits due to her, prejudgment interest, costs of litigation, and attorney's fees, as well as any other relief deemed lawful, just, and proper. (Doc. Nos. 1, at 10; 13 at 2). Nevertheless, neither Plaintiff nor Defendants provided arguments in their memoranda or at the hearing regarding what remedy is appropriate for this case.

### A. Remand or Award of Substantive Benefits

Generally, remand is appropriate when a plan administrator's decision is overturned. See Bernstein, 70 F.3d at 788 ("The administration of benefit and pension plans should be the function

of the designated fiduciaries, not the federal courts."); Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994). But, "remand is not required, particularly in cases in which evidence shows that the administrator abused its discretion." Helton v. AT&T Inc., 709 F.3d 343, 360 (4th Cir. 2013); see also Miller v. United Welfare Fund, 72 F.3d 1066, 1075 (2d Cir. 1995) (Calabresi, J., concurring in part, dissenting in part) ("[W]hen the trustees have demonstrated a manifest unwillingness to give fair consideration to evidence that supports the claimant, the claim should not be returned to the trustees."). Additionally, "if the evidence in the record clearly shows that the claimant is entitled to benefits, an order awarding such benefits is appropriate." Gorski v. ITT Long Term Disability Plan for Salaried Employees, 314 Fed. App'x 540, 548 (4th Cir. 2008) (quoting Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1194 (10th Cir. 2007)).

The Court finds that Defendant Aetna has demonstrated a "manifest unwillingness to give fair consideration" to Plaintiff's evidence and that "the record clearly shows that the claimant is entitled to benefits." The record shows a long-documented history of Plaintiff's pain and fatigue and an undisputed diagnosis of fibromyalgia. Despite this diagnosis, and the subjective nature of the symptoms associated with fibromyalgia, Defendant Aetna wholly failed to address Plaintiff's subjective claims in its decision to discontinue LTD benefits and its denial of Plaintiff's initial appeal of that decision. Every doctor that physically examined Plaintiff, at least to the extent of the Record, determined that Plaintiff was suffering from pain, fatigue, and tender points associated with fibromyalgia. Further, the doctors that physically examined Plaintiff all concluded that she was, and remains, unable to hold a reasonable occupation. Yet, in light of all that evidence, Defendant Aetna relied on paper reviewers that provided no reason to discredit Plaintiff or her treating physicians. The Court notes that Defendant Aetna previously awarded STD and LTD

benefits to Plaintiff, and the Court takes that fact into consideration. Nevertheless, those previous awards do not overcome the shortcoming of not addressing Plaintiff's subjective complaints, particularly in a case of a disease like fibromyalgia. Accordingly, instead of remanding to Defendant Aetna who had more than ample opportunity to establish a record to overcome Plaintiff's claims, the Court deems it appropriate to order that Defendants reinstate Plaintiff's LTD benefits and pay any past due benefits. The Parties are ordered to submit supplemental briefing, per the instructions below, detailing the amount of benefits due to Plaintiff.

B. Prejudgment Interest

Plaintiff has not submitted any facts, case law, or arguments to support its claim for prejudgment interest, but the Court nonetheless will assess the merits of the claim since it was included in the Complaint. ERISA does not explicitly provide for prejudgment interest so it is left to the discretion of the trial court. Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030 (4th Cir. 1993). "The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 195 (1995). "[T]he governing principle is one of fairness." Mary Helen Coal Corp. v. Hudson, 235 F.3d 207, 211 (4th Cir. 2000) (internal quotation and citation omitted). In determining the appropriate prejudgment interest rate, courts should look to the state statutory interest rate. Quesinberry, 987 F.2d at 1031. In North Carolina, that rate is eight (8) percent. N.C. Gen. Stat. § 24-1 (2016).

Plaintiff has been deprived of LTD benefits due to her for over two and a half years—since April 1, 2014. Principles of fairness govern that Plaintiff be compensated for the "loss of the use" of those funds, particularly in light of the intended purpose of LTD benefits. Quesinberry, 987 F.2d at 1030. The Court finds it proper to use North Carolina's statutory interest rate of eight (8)

percent. Accordingly, Defendants are ordered to pay eight (8) percent prejudgment interest, calculated simply, for past-due LTD payments.

C. Attorneys' Fees

ERISA provides for the discretionary award of attorneys' fees and costs of action to parties who have "some degree of success on the merits." 29 U.S.C. § 1132(g)(1); Hardt v. Reliance Std. Life Ins. Co., 560 U.S. 242, 244 (2010) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)). In the Fourth Circuit, if a party meets the initial burden of "some degree of success on the merits, its claims for attorneys' fees under ERISA are governed by a five-factor test:

    (1) degree of opposing parties' culpability or bad faith;

    (2) ability of opposing parties to satisfy an award of attorneys' fees;

    (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

    (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

    (5) the relative merits of the parties' positions.

Williams, 609 F.3d at 645 (quoting Quesinberry, 987 F.2d at 1029). The five factors act as general guidelines and do not provide a rigid test, nor are any of the factors necessarily decisive. Quesinberry, 987 F.2d at 1029 (citations omitted).

Every factor—except the fourth factor—weighs in favor of Plaintiff being awarded attorneys' fees. Similar to the facts in DuPerry, the defendant administrator dismissed Plaintiff's subjective complaints "without meaningful inquiry." 632 F.3d at 877. Additionally, and relatedly, an award of attorneys' fees here may deter Defendant Aetna and other plan administrators from

improperly discounting cases involving subjective complaints in the future. See id. (finding that awarding attorneys' fees in a case like this one "may produce a deterrent effect by encouraging plan administrators to inquire more meaningfully into disability claims that rely on subjective complaints of pain"). Furthermore, Defendant Aetna has engaged in similar conduct in other cases and had decisions overturned because of it. See, e.g., Dunda v. Aetna Life Ins. Co., 2016 U.S. Dist. LEXIS 85549 (W.D.N.Y. 2016) (finding Aetna's LTD termination to be arbitrary and capricious for requiring objective evidence when not required by the plan and failing to fully credit plaintiff's subjective complaints); Fisher v. Aetna Life Ins. Co., 890 F. Supp. 2d 473 (D. De. 2012) (finding Aetna's denial of STD benefits to be arbitrary and capricious when based on a lack of objective medical evidence to substantiate plaintiff's subjective complaints of headaches); Wong v. Aetna Life Ins. Co., 51 F. Supp. 3d 951 (S.D. Cal. 2014) (finding that Aetna abused its discretion by relying on a lack of abnormal physical exam findings and overlooking subjective complaints of pain—essentially constituting a new requirement of objective evidence). The merits of Defendants' arguments, or lack thereof, also counsel in favor of an award of attorneys' fees. On appeal to this Court, Defendants have still failed to meaningfully address Plaintiff's subjective complaints of pain, or in the alternative explain why those complaints were not addressed more thoroughly at the administrative level. Indeed, Defendants' arguments could not even withstand the generous abuse of discretion standard of review. With respect to the second factor—Defendant Aetna has the ability to satisfy an award of attorneys' fees.

In sum, the Court finds that Plaintiff is entitled to reinstatement of her monthly LTD benefits, back payment for past-due benefits, prejudgment interest, and attorneys' fees and costs associated with this litigation. The parties shall file supplemental briefing, as directed below, on the precise dollar amount to be paid to Plaintiff.

V. **CONCLUSION**

**IT, THEREFORE, IS ORDERED**, that

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 15), is **DENIED**;

3. Defendants shall fully reinstate Plaintiff's monthly long-term disability benefits and pay any and all past-due benefits;

4. Plaintiff is entitled to prejudgment interest at the statutory rate of eight (8) percent;

5. Plaintiff is entitled to reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g);

6. The parties shall attempt to submit a joint pleading twenty-one (21) days from the entry of this order detailing the exact dollar amount of reinstated benefits, past-due benefits, prejudgment interest, and attorneys' fees owed to Plaintiff. If the parties cannot agree to a joint pleading, Plaintiff's brief on the same subject is due twenty-one (21) days from the entry of this order, Defendants' response is due fourteen (14) days from the submission of Plaintiff's brief, and Plaintiff's reply is due seven (7) days from the submission of Defendants' response.

Signed: December 27, 2016

Robert J. Conrad, Jr.
United States District Judge